DOOLITTLE & SHERMAN V. SHERIDAN SHAW, Appellant.

**Conversion.** The mere fact that a horse is driven beyond the point 1-2-3 fixed in hiring him, will not show conversion.

**Sunday Contract.** It is not material that a conversion occurs in 4 carrying out a contract made on Sunday.

*Appeal' from Delaware District Court.*—HON. FRED .O'DONNELL, Judge.

TUESDAY, OCTOBER 23, 1894.

ACTION for the recovery of the value of a horse. Verdict for plaintiffs. Defendant appeals.—*Reversed.*

*A. A. House* for appellant.

No appearance for appellees.

KINNE, J.—Plaintiff's cause of action is stated in two counts. The first charges that on September 1, 1892, defendant had and received from the plaintiff a pair of horses and buggy, of the value of two hundred and fifty dollars, to drive from Delhi, Iowa, to Manchester, Iowa; that defendant drove said horses so immoderately, and so neglected their care, that one of them became sick, and defendant, knowing said fact, continued to drive and abuse said horse until his death; that plaintiffs were damaged in the sum of one hundred dollars. In a second count, plaintiffs aver that they paid two dollars, at defendant's instance, to have the horse buried. In an amendment it is averred that the team and buggy were loaned to defendant to go from Delhi to Manchester and return, and that defendant, after driving to Manchester, converted said team and buggy to his own use, and failed to return said team as received, and still fails to return one of said horses,

which horse was worth one hundred dollars, for which they pray judgment. Defendant denied all of the allegations of the original petition. Afterward, in an amendment, he pleaded that the contract of letting and hiring set out in the petition, and the damage growing out of the same, and all matters set out in the amendment, occurred on Sunday, and no right of action can be maintained thereon. There was a trial to a jury, and a verdict for plaintiffs.

II. On Sunday, September 4, 1892, defendant hired of plaintiffs a team of horses and a buggy to drive from Delhi to Manchester and return. After arriving at Manchester he drove six or seven miles into the country. He then returned to Manchester, where he let one Luke Connelly drive the team to the fair ground and back, after which defendant and Connelly started on the return trip to Delhi, and, when about midway between the two places, one of the horses was taken sick and died. At the close of plaintiff's testimony, defendant moved for a verdict, which motion was overruled. The grounds of the motion were, *first*, that the testimony showed a letting of the team on Sunday, and plaintiffs did not bring themselves within the exceptions of the statute prohibiting work on that day; *second*, that it was not shown that the death of the horse was caused by driving to a place other or different from the place where it is alleged the horses were let to be driven; and, *third*, no negligence or misconduct of the defendant is shown in the management or driving of said horse. We need not consider the ruling on this motion, as the questions therein presented are also raised in the further progress of the trial. In the seventh and eighth instructions given by the court to the jury, they were told, in substance, that if defendant hired the team, and drove them so immoderately, and was so negligent in caring for them, that one of them became sick, and defendant, with knowledge of such

sickness, continued to drive and abuse the horse until it died, and if such treatment was such as an ordinarily prudent man would not give such horse under like circumstances, and if the contract of hiring was made on Sunday, they should find for the defendant. No complaint is made of these instructions, and, whether right or wrong, they are to be treated as the law of the case, so far as the cause of action stated in the first count is concerned. The case, then, is to be considered, so far as legal errors are concerned, with reference to the cause of action for the conversion of the horse.

III. The court gave the jury the following instruction: "(9) If you find from the evidence that the team was hired or given to defendant only for the purpose of driving from Delhi to Manchester, and that, being so hired, defendant, without the consent of plaintiffs, drove some miles away from the line of travel between said towns, to a place not contemplated by the contract of hire, then such use of the team would be a conversion of the same by the defendant, and the plaintiffs might elect to recover the value of any part of such team and buggy as was not returned to and accepted by them after knowledge of such conversion; and plaintiffs would have a right to recover, if you find such to be the fact, even though the evidence disclosed that the contract of hire by which defendant secured possession of the property was made on Sunday." The instruction lays down the broad rule that a mere diversion from the line of travel, or going beyond the point for which the horse was hired, will, without more, amount to a conversion of the animal, for which an action will lie. What will amount to a conversion in such cases is the question we must determine.

In *Spooner v. Manchester*, 133 Mass. 270, the court defined a conversion as follows: "Conversion is based upon the idea of an assumption by the de-

fendant of a right of property, or a right of dominion over the thing converted, which casts upon him all the risks of an owner; and it is, therefore, not every wrongful intermeddling with, or wrongful asportation, or wrongful detention of, personal property, that amounts to a conversion. Acts which themselves imply an assertion of title or of a right of dominion over personal property, such as a sale, letting, or destruction of it, amount to a conversion, even though, the defendant may have honestly mistaken his rights; but acts which do not themselves imply an assertion of title, or of a right of dominion over such property, will not sustain an action of trover unless done with the intention to deprive the owner of it permanently or temporarily, or unless there has been a demand for the property, and a neglect or refusal to deliver it, which are evidence of a conversion." *Evans. v. Mason,* 64 N. H. 98, 5 Atl. Rep. 766. In Story on Bailments (section 413a), after stating the rule as to what is a conversion in such cases, it is said: "But, although this is the general rule, a question may arise how far the misconduct or negligence or deviation from duty of the hirer will affect him with responsibility for a loss which would and must have occurred, even if he had not been guilty of any such misconduct, negligence, or deviation from duty." He also, in the same connection, says: "The question, therefore, in the present state of the authorities, must still be deemed open to controversy. Wherever it is discussed it will deserve consideration, whether there is, or ought to be, any difference between cases where the misconduct of the hirer amounts to a technical or an actual conversion of the property to his own use, and cases where there is merely some negligence or omission or violation of duty in regard to it, not conducing to the loss." Schouler, Bailments, page 137, referring to this same matter, says: "It is not difficult to conceive that the

technical misuse might occur without an actual abuse of the terms of hire, and where it would be harsh to visit deviation with such disastrous penalties.''

We are not willing to give our sanction to the broad, and, when applied to a case like that at bar, harsh rule of the instruction. It must be borne in mind that, in almost every case where that strict rule has been applied, the facts have shown that the hirer, in addition to departing from the contract line of travel, was guilty of negligence or of willful misconduct, or that he injured or destroyed the property while outside of the limits of the contract of hiring. Schouler, Bailm., p. 137; *Farkas v. Powell,* 13 S. E. Rep. (Ga.) 200. In the case last cited the action was for the value of a horse which had died, and which it was alleged defendant had ridden beyond the place he had hired him to go, and that by negligence or cruelty the horse had been so injured as to cause his death. The horse was hired to ride from Albany to the Whitehead place, in the country, a distance of five miles, and was to be returned by 11 o'clock at night. When defendant arrived at the Whitehead place he learned that the person he wished to see was at the Bryant place, three or four miles further on, and he rode on to that place. He remained there two hours and a half, and left about 9:30 p. m. for Albany. On the return, and between the Whitehead place and Albany, the horse fell in the road. He got the horse up on his feet, and led him three miles, when he again fell. After getting him on his feet again, he put him in a lot near by, and went into town, and notified the plaintiff where the horse was, and of his condition. The horse died. It appeared that, when defendant got the horse to go upon his journey, he was sound and in good condition, and showed no signs of disease. The defendant showed that he rode the animal moderately. It was held that there was a technical conver-

sion of the horse, and, if the horse had been injured while beyond the point to which he was hired to go, defendant would have been liable, whether the injury was caused by his own negligence, or by the negligence of others, or even by accident, unless he was forced to go beyond that point by reason of circumstances he could not control.

The court said: "But the main question in this case is, would Powell, after having been guilty of a technical conversion or violation of his duty, and having returned within the limits of the original hiring, and the horse then sustained an injury without other fault on his part, be liable? That would depend, in our opinion, upon whether the extra ride of six or eight miles to the Bryant place and back caused or materially contributed to the accident. If it did, we think he would be liable to the owner. * * * If, however, the extra ride did not cause or materially contribute to the injury, we do not think Powell would be liable, if guilty of no other fault." In *Harvey v. Epes*, 12 Grat. (Va.) 153, the contract was one for the hire of slaves for a year, to work in a certain county. They were taken by the hirer, without the owner's consent, to another county, and employed in the same kind of work, and, while there, died. The court, after elaborately discussing the question and fully considering the authorities, held that the removal of the slaves to a county other than that for which they were hired to work in was not of itself a conversion, regardless of whether their death was caused by such wrongful act or not. It said: "Upon the whole, I am of opinion that, in the case of a bailment for hire for a certain term, * * * the use of the property by the hirer, during the term, for a different purpose, or in a different manner, from that which was intended by the parties, will not amount to a conversion for which trover will lie, unless the destruc-

tion of the property be thereby occasioned, or at least unless the act be done with intent to convert the property, and thus to destroy or defeat the interest of the bailor therein. * * * A bailment upon hire is not conditional in its nature, any more than any other contract; and, in the absence of an express provision to that effect, the bailee will not, in general, forfeit his estate by a violation of any of the terms of the bailment. * * * If he merely uses the property in a manner, or for a purpose, not authorized by the contract, and without destroying it, or without intending to injure or impair the reversionary interest of the bailor therein, such misuse does not determine the bailment, and, therefore, is not a conversion for which trover will lie." See, also, 2 Pars. Cont., p. 128. In *Cullen v. Lord*, 39 Iowa, 302, the action was for the recovery of the value of a horse loaned to defendant, and which it was averred was killed by the defendant's overdriving and ill treatment. It was held that the jury should have been instructed that, in the absence of a contract to the contrary, the law implied an agreement to pay for the use of the horse. The evidence tended to show that plaintiff gave defendant certain instructions and directions respecting the time of starting, and the manner of caring for the horse. An instruction of the lower court to the effect that, if plaintiff gave instructions and directions, and did not afterward waive them, and defendant did not follow them, he would be liable, without inquiry as to whether the injury resulted from a failure to obey the instructions or from some other cause, was held erroneous as applied to a case of letting for a reward. While the facts in that case, so far as they appear, are not like those in the case at bar, still we think there is a clear recognition of the doctrine that, in cases of a letting for reward, a mere violation of the contract, without more, will not fix a liability as for a conversion. To constitute a conversion in a case

like that at bar, there must be some exercise of dominion over the thing hired, in repudiation of, or inconsistent with, the owner's rights. We hold that the mere act of deviating from the line of travel which the hiring covered, or going beyond the point for which the horse was hired, are acts which, in and of themselves, do not necessarily imply an assertion of title or right of dominion over the property, inconsistent with, or in defiance of, the bailor's interest therein.

As there was nothing to show that the defendant, in violating the terms of the contract, intended to appropriate the property temporarily or permanently to his own use, or that he did in fact so appropriate it, or exercise acts of dominion over it inconsistent with plaintiffs' rights, he should not be held liable for its value from the mere fact that he drove the horse beyond or outside of the journey for which he was hired. Nor do we see that the rule we have stated is fraught with danger in its application to other cases that may arise. We are not called upon to determine as to whether or not the defendant would have been liable if, under proper issues and evidence, it had been shown that the extra driving caused or contributed to the death of the horse, as no such case is presented. As to the fact that the contract was entered into on Sunday, we do not think it is at all controlling. The action is not based upon the contract, but upon the theory that defendant converted the property to his own use. If he did so, he was not acting under the contract, but independent of it. We discover no error in the eleventh instruction. For the reasons given, the case is REVERSED.