HERRING MOTOR COMPANY, Appellee, v. JOHN G. MYERLY et al., Appellants.

NOVEMBER 20, 1928.

REHEARING DENIED MARCH 8, 1929.

*O. M. Brockett* and *J. G. Myerly,* for appellants.

*Walter L. Stewart,* for appellee.

EVANS, J.—I.   On June 24, 1925, the defendant Wassgren was engaged in cutting down a tree upon the premises owned and occupied by the defendants Myerly.   The tree fell in part  upon the adjoining street.  At the moment of its falling, the driver of plaintiff's automobile was approaching the place, and was unable, after discovery of the falling tree, to stop his car in time to avoid injury thereto.   The nature of the injury consisted mainly in the denting of fenders and hood and in the breaking of the top and the wind shield.  The car was a new Lincoln car, listed in value at $4,040.   The injured parts were all replaced with new parts, at a cost of $540, which included the cost of repainting the car.   Twenty-one errors are assigned.   It was, and is, the emphatic contention of the defendants Myerly that Wassgren was not acting as their employee or servant, and that he was a mere volunteer, acting against the direction of the Myerlys, or, at most, that he was only an independent contractor.   The evidence introduced in support of this contention was that Myerly had refused to permit Wassgren to cut down the tree, but had contemplated that a more expert employee should be engaged.   Consent had been given to Wassgren, however, that he might assist such other employee in the work whenever it should be undertaken.   According to this evidence, Wassgren embarked upon the enterprise alone, at a venture, without notifying Myerly.   The jury was not bound to take this evidence literally, to the exclusion of all other facts and circumstances in the case. We think that the evidence was sufficient to sustain a finding by the jury that Wassgren was the employee of the owner for the purpose of felling the tree, even though he was not the exclusive employee contemplated by the owner for such purpose.  If the jury could find from the evidence that Wassgren was an employee for the purpose of felling the tree, then necessarily the

felling of the tree was within the scope of his employment. This fixes the liability of his employer, even though he acted in violation of the instruction or plan of the employer. The briefs on both sides are full of citations on this proposition. They present no material conflict, when properly considered together, and we shall not enter into a detailed discussion of them.

II. The more serious question which we find upon this record is the instruction of the trial court on the measure of damages, as set forth in Instruction No. 9. We quote from this instruction the following:

"It is a rule of law that, where an injury to a car can be repaired, so that, when repaired, it will be in as good condition as it was before the injury, then the measure of damages is the reasonable cost of repair *plus the reasonable value of the use of the car while being repaired, with ordinary diligence, not exceeding the value of the car before the injury.* When the car cannot, by repair, be placed in as good condition as it was before the injury, then the measure of damages is the difference between the reasonable market value immediately before and immediately after the accident. There has been placed before you in this case evidence touching both theories of the measure of damages submitted to you herein. You will apply the rules herein quoted to the facts and circumstances brought out by the evidence in this trial, and award the plaintiff such a sum as you think will justly and reasonably compensate it for the damages sustained, if any."

The driver of the car, Luverne Herring, as a witness, gave the following description of the injury thereto:

"When my car stopped, the tree was resting on the front part of the car,—not clear up on the hood. The top could not have been repaired, to make the car good on that class of car. The front fenders were dented. That injury could not be always be repaired all right. Both of the fenders were dented. The right fender was worse crumpled than the left. Those fenders sold for twelve dollars at that time. I would not say that the left fender could have been ironed out in its original condition. There was a very slight dent in the hood. That could be straightened out all right. The right front headlight

was dented, and the left one also.. The radiator shield was dented, and the wind shield was crooked, and the glass broken, and top torn. One of the headlight lenses was broken. These cost four dollars. The right front headlight had to be replaced, and the door on the left one replaced. The door cost $13.50, including the lens. Just one new headlight and one new door were required, to make the headlights all right. The radiator shell was so badly dented that it could not be replaced. The radiator was all right. I doubt whether the radiator shell could have been sent to the factory and fixed up. The wind shield glass was broken and the uprights bent, so that a new wind shield was necessary. This was an open car,—not a closed car. The price of the wind shield was $80. The radiator shell was below $20. The top was torn, and the painting, so that the car had to be refinished. It had to be repainted because of the scratch on the hood and sides of the car by the twigs and branches The cowl was scratched. You cannot refinish just one portion of a car. * * * With these replacements, the car would not be worth as much as before the accident, because it was what is known as a wrecked car. It would not be as good as before the injury, because these other parts could not be put in like they do at the factory. As to the wind shield, it took four men and two painters a week to get the wind shield on.''

Testimony was offered, also, to the effect that the car in its damaged condition immediately after the accident was worth from $1,200 to $1,700. As already indicated, the total cost of replacing the injured parts and repainting the car was $540. The verdict of the jury was for $2,000. The quotation which we have made above, from Instruction No. 9, was correct, as an abstract proposition of law. *Langham v. Chicago, R. I. & P. R. Co.*, 201 Iowa 897. The unfortunate feature of it was that it departed from the evidence in the record, in that it permitted the jury to consider the value of the use of the car during the period of repair; whereas no evidence was introduced as to the value of such use. That this feature of the instruction was prejudicial is indicated strongly by the great excess of the verdict over the cost of complete repair. The evidence on behalf of plaintiff disclosed that the injury suffered was substantially reparable, so far as the intrinsic value of the automobile was concerned. The only claim of diminished value after repair was

predicated upon the fact that the car would be denominated a wrecked car. Such effect upon the value of the car was psychological. This is an element which doubtless may not be wholly ignored, in considering the depreciation of the market value of a new article of merchandise. But the injury described in this case was one which would naturally classify as a reparable injury, even though it might have been proper to find depreciation, notwithstanding the repair. The amount of the verdict as compared with the cost of repair, and in the light of the evidence as a whole, would tend to the indication that the jury allowed a substantial sum for the use of the automobile during the period of repair. We are of opinion, therefore, that the instruction, though abstractly correct, was erroneous in its application to the evidence in the record. On this ground, a new trial ought to have been granted.

The judgment below, is, accordingly,—*Reversed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.