Robert G. HALFERTY, Appellee,

v.

HAWKEYE DODGE, INC., Appellant.

No. 52878.

Supreme Court of Iowa.

May 7, 1968.

Wilson, Hyland & Brick, Des Moines, for appellant.

Steward, Hopkins & Bump, Des Moines, for appellee.

STUART, Justice.

This is an action at law founded upon breach of a bailment contract. Plaintiff's car was damaged extensively while Hawkeye Dodge, Inc. had possession for the purpose of making minor repairs. The trial court, sitting as trier of fact, allowed the cost of repairs and $585 for "loss in value" of the automobile. Defendant has appealed.

The dispute centers around the $585 award. No question is raised about the cost of repairs. Therefore, there is no reason to complicate this discussion by references to the circumstances and issues surrounding the damage to the car. We are here concerned with the conduct of the parties after the accident.

The car was damaged March 19, 1965. Plaintiff found out about it when he came to defendant's garage for the car that evening. At that time he accepted the use of another car and was given the impression his car would be replaced with a new one. The garage began repairing the car the next day. The trial court's finding that plaintiff neither expressly nor impliedly authorized the repair work is not challenged.

Later plaintiff became fearful that defendant expected him to take back the repaired automobile and he was concerned with its condition. On April 15, 1965 his attorney wrote defendant:

"The undersigned firm has been retained to represent Mr. Halferty in this claim against your company. Neither Mr. Halferty nor the writer feel that he should be required to suffer the depreciation in value to this vehicle because of the collision while the car was in your custody.

"Mr. Halferty has authorized me to inform you that he will not accept repairs of this damage to his new automobile in satisfaction of his claim against Hawkeye Dodge Incorporated."

On May 10 defendant's manager called plaintiff and told him the car was repaired and ready for him to pick up. The same day plaintiff filed a petition against defendant claiming the car had not been returned after his demand and asking for the reasonable value of the car and $440 for "loss of use". Hawkeye notified him to return the loaned car May 12. His car was not returned to him, or offered to him at that time. At no time did he request the return of the car in its repaired condition.

Nothing had been said to plaintiff up to this time about the repair bill or whether he would be expected to pay it. About the first of July plaintiff received a monthly statement for the repairs in the amount of $868.74. The record does not show that anything further material to our discussion here occurred until the day of the trial.

On August 12, 1965, the day of the trial, plaintiff amended his petition to claim damages of $968.70 for the difference in the value of the car immediately before and immediately after the collision. He also asked for $750 damages for the wrongful retention of the automobile and for the return of the car. At the conclusion of the trial, before the decision, defendant agreed "to return the car in its repaired condition, and plaintiff agrees to accept the same". During trial it was con-

ceded plaintiff was not to be charged for the use of the borrowed car.

I. The trial court found "shortly after April 15th, 1965 (Hawkeye) demanded that plaintiff execute a release to defendant Maiden (a third party defendant not involved in the appeal) without any provision for loss of use of plaintiff's car or for payment of the rental charges on the car which Hawkeye had loaned to plaintiff. From this a fair inference may be drawn that any demand by plaintiff for return of his car would be futile."

Defendant, while acknowledging these findings have the force and effect of a jury verdict if there is substantial support in the record, Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 839–840, 118 N.W.2d 565, 567, claims such support is lacking. We agree.

The only reference to a release is found in the testimony of Mr. Cannon, Manager of Hawkeye Dodge. On direct examination he testified: "We notified them that their car was ready, and then we were informed that they weren't going to sign for the car, sign a release for the car, and I told them that our loaned automobile would have to be brought back to the shop."

On cross-examination he testified: "Q. Now, when was it that you first found out that Halferty wouldn't sign a release for the car? A. I would believe this letter (letter of April 15 from plaintiff's attorney) was my first official notice."

"Mr. Maiden's insurance company had asked me to get a release from Mr. Halferty. This would be releasing Maiden from any further liability. That would be the amount of the repair bill, Eight Hundred Sixty-eight Dollars and Seventy-four cents.

"Q. So, Mr. Halferty couldn't have picked that car up and taken it without signing such release, could he? A. Had I been approached on it, its possible that Crocker Claims Service, we would have negotiated it until I was officially notified I was in suit. This was not brought up to me."

■ Plaintiff did not testify to any such demand for a release. Until the date of the trial he never requested return of the car. His conduct, the letter of his attorney and his pleadings all show he did not want the repaired car back. The first indication of a change in position was found in his amended petition filed on the date of trial. The evidence is not sufficient to justify the conclusion it would have been futile to make a demand for possession.

■ II. Defendant claims the trial court erred in finding that it did not offer plaintiff's car to him on May 12, when he returned the borrowed car. The finding is supported by the record, but has no particular significance as the car had been offered to plaintiff on May 10. He did not pick it up then, but brought suit seeking the value of the car rather than its return. On May 12 Hawkeye knew plaintiff's attitude on the matter.

III. The trial court allowed plaintiff damages for the loss in value of his automobile between the date of the damage and the date of trial at which time he accepted possession in the repaired condition. He found this difference in value to be $650. He then applied the loss of use concept and reduced the figure for the time defendant furnished plaintiff a car to use. The net damages allowed were $585.

Defendant claims this was error as one cannot recover for the wrongful retention of property against someone who had lawful possession until a demand has been made. It finds support in Luther v. National Investment Co., 222 Iowa 305, 311, 268 N.W. 589, 592; Hart v. Wood, 202 Iowa 58, 63, 209 N.W. 430; Smith & Co. v. McLean, 24 Iowa 322, 325; Universal C.I.T. Credit Corp. v. Thompson, 349 Ill. App. 464, 110 N.E.2d 877; Rasmussen v. O. E. Lee & Co., 104 Mont. 278, 66 P.2d

119. This replevin rule has been applied to bailments. 77 C.J.S. Replevin § 66, p. 42.

■ The trial court answered this argument in two ways. He first found plaintiff made proper demand for his car when he came to get it the day the injury occurred. The acceptance of the loaned automobile merely postponed the time for its return. There is no evidence he ever demanded or even wanted his car back after it was damaged. He did not demand it in its damaged condition. He refused to take it in its repaired condition. As far as the record shows, until the day of the trial he wanted it replaced with a new car. We do not believe this record is sufficient to constitute a demand.

The trial court also found a demand for the return of the car would have been futile. We determined the record did not support such finding in Division I.

Plaintiff does not urge that a demand was made but seeks to avoid the necessity for a demand on the theory that demand is not necessary to recover for the wrongful retention of property where there has been an actual conversion, citing Brown v. Dubuque Altar Mfg. Co., 163 Iowa 343, 346, 144 N.W. 613; Doolittle & Sherman v. Shaw, 92 Iowa 348, 351, 60 N.W. 621, 622; 18 Am.Jur.2d 198, Conversions, § 63; 89 C.J.S. Trover & Conversion § 57, p. 561. We need not discuss these authorities as we conclude defendant's actions here did not constitute an actual conversion.

■ Plaintiff apparently relies on the trial court's finding that Hawkeye proceeded to repair the car without plaintiff's express or implied consent. We do not believe, under the portions of the record referred to above this amounted to a conversion. The differences arose over who would have to take the repaired car not its conversion by making repairs.

■ A bailee is responsible for repairs to bailed property made necessary by his negligence. Jones v. O'Bryon, 254 Iowa 31, 38, 116 N.W.2d 461, 465; Stevenson v. Reimer, 240 Iowa 652, 656–657, 35 N.W.2d 764, 766; Walters v. Sanders Motor Co., 229 Iowa 398, 399–400, 294 N.W. 621, 622; 8 Am.Jur.2d 1052, Bailments, § 161. In making repairs defendant was attempting to put the car in the condition it was in at the commencement of the bailment.

Therefore, as Hawkeye had lawful possession of the automobile and did not convert it to its own use, failure to demand its return prevents recovery of damages for loss of use.

IV. However, this does not mean plaintiff incurred no damages beyond the cost of repairing his automobile. There was evidence one could see by an inspection it had been damaged and repaired. There was also evidence the market value of such car was less than a car in similar condition which had never been damaged. The automobile, therefore, was not placed in as good condition as it was before the injury and the proper measure of damages would be the difference between its reasonable value immediately before and immediately after the accident. Langham v. Chicago, R. I. & P. R. Co., 201 Iowa 897, 901, 208 N.W. 356; 8 Am.Jur.2d 1222, Bailments § 334; Annotation, 135 A.L.R. 1198.

■ Under the present state of the record, however, it is impossible to apply this measure of damages. Hawkeye repaired the car and plaintiff, at the day of trial, accepted it in its repaired condition. The question of the value immediately after the injury or the cost of repairs has been eliminated. We have held plaintiff is not entitled to damages for loss of use under the evidence. The only issue remaining is the difference between the value of the property before injury and its value as repaired.

■ "It is not unusual to allow recovery for the reasonable cost of repairing or restoring injured property, especially where the expense of so doing is less than the diminution in value because of the injury.

And if the value of the repaired or restored property is less than the value of the property before the injury, such difference in value is also allowed, in addition to the reasonable cost of repair or restoration. 25 C.J.S. Damages § 83b, page 599; 15 Am.Jur., Damages section 124, page 534." Conditioned Air Corporation v. Rock Island Motor Transit Co., 253 Iowa 961, 965, 114 N.W.2d 304, 307. See Herring Motor Co. v. Myerly, 207 Iowa 990, 993–994, 222 N.W. 1; Anno. 18 A.L.R.3rd 497, §§ 15 and 16, 537–542; Restatement Torts, § 928.

The case is reversed and remanded for a determination of that issue.

Reversed and remanded.

All Justices concur, except RAWLINGS and BECKER, JJ., who dissent.