Arthur LONG, Appellant,

v.

Dan McALLISTER; McAllister Seed Company, Inc., An Iowa Corporation; and I.M.T. Insurance Company, An Iowa Corporation, Appellees.

No. 66642.

Supreme Court of Iowa.

May 19, 1982.

Edwin F. Kelly and Barry D. Farmer of Kelly & Morrissey, Fairfield, for appellant.

Craig D. Warner of Pryor, Riley, Jones & Aspelmeir, Burlington, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK and ALLBEE, JJ.

McCORMICK, Justice.

This tort action arose from a dispute concerning adjustment of motor vehicle property damage under the liability coverage of the tortfeasor's insurance policy. In entering summary judgment for defendants, the trial court limited plaintiff's recovery to the reasonable value of his automobile at the time it was damaged, with interest from the date of judgment. The questions here are whether the court erred in refusing to award prejudgment interest, in denying the right to damages for loss of use, and in dismissing plaintiff's claim against the insurer for bad faith in adjusting the loss. We find that plaintiff was entitled to prejudgment interest and an opportunity to prove loss of use damages, but we refuse to recognize a bad faith claim of the nature alleged. Therefore we affirm in part and reverse and remand in part.

Plaintiff Arthur Long's automobile was damaged on October 19, 1978, when a farm wagon of defendants Dan McAllister and McAllister Seed Company, Inc., rolled down an incline and struck it. These defendants had property damage liability insurance covering the loss with defendant I.M.T. Insurance Company and another insurer. Although I.M.T. obtained repair estimates from plaintiff shortly after the occurrence, thirty-three days passed before the insurers agreed between themselves on how the loss would be shared. Eight days later I.M.T. offered plaintiff $1250 to settle the loss in behalf of McAllister and the seed company. No dispute existed concerning liability or the fact the vehicle was damaged beyond repair.

After first agreeing to the settlement, plaintiff later in the same day rejected it as inadequate. Eventually plaintiff employed an attorney who demanded $1500 in settlement. I.M.T. raised its offer to $1300 but received no response. Plaintiff later brought the present action in two counts.

In the first count, he sought recovery against McAllister and the seed company on negligence grounds. He alleged he was entitled to the market value of the vehicle of $1300 with interest at seven percent from the date of the accident and at the maximum legal rate from the date the petition was filed. He also alleged he was required

to rent substitute transportation at a cost of $500 "during the time he was requested to await adjustment" of the loss, and he asked judgment for this amount as well.

In the second count of the petition, plaintiff alleged I.M.T. had a fiduciary responsibility to its insureds and to plaintiff to adjust the loss promptly and in good faith. He alleged that I.M.T. breached this duty by failing to pay the part of his claim not in dispute, asked for judgment for that amount, with interest, and asked for $10,000 in punitive damages.

In their answer, defendants admitted all of the essential allegations of count I except the allegations concerning loss of use and rental of substitute transportation, which they denied. Among the allegations admitted was paragraph 7 of the petition which alleged:

Because of the [occurrence] herein, Art Long's vehicle was made inoperable and the cost of repairing Art Long's vehicle exceeded its market value of $1300.00 and Art Long is entitled to judgment for its October 17, 1978 value of $1300.00 with interest at the rate of seven percent from October 19, 1978 through date of filing this Petition and thereafter at the maximum legal rate, allowed for interest.

In addition, defendants asserted an affirmative defense, alleging that the exent of their obligation was to pay plaintiff $1300 with interest from the date of the accident.

Subsequently defendants offered to confess judgment for $1300 with interest at seven percent from the date of the accident to December 31, 1980, and at ten percent thereafter. Defendants also moved for adjudication of law points, alleging unavailability of loss of use damages when a motor vehicle has been totally destroyed. Plaintiff did not accept the confession of judgment, and the trial court ruled in defendants' favor on the motion to adjudicate law points.

Defendants next filed a motion for summary judgment, alleging that McAllister and the seed company owed plaintiff only $1300 plus interest at ten percent per annum from the date of filing the petition

under count I. That amount was deposited with the clerk. I.M.T. asked for judgment on count II of the petition on the ground it failed to state a claim on which relief could be granted. The trial court subsequently sustained the motion and entered judgment for plaintiff on count I for the $1314.25 deposited with the clerk, and for I.M.T. on count II. As authorized by Iowa R.Civ.P. 237(c), plaintiff filed a rule 179(b) motion challenging the court's failure to award prejudgment interest on count I. The court refused to change the judgment, and this appeal followed.

■■■ I. *Prejudgment interest.* The question of plaintiff's entitlement to prejudgment interest on the amount representing the reasonable market value of his automobile at the time of the accident is controlled by the admission in defendants' answer. Plaintiff alleged and defendants admitted plaintiff's entitlement to interest on the $1300 award at the rate of seven percent from the date of the accident and at the maximum legal rate from the date of filing of the petition. When a fact alleged in a pleading is admitted, the fact is no longer an issue. *Smith v. Bitter,* 319 N.W.2d 196, 199 (Iowa 1982) (filed separately this date); *Cowles Communications, Inc. v. Board of Review of Polk County,* 266 N.W.2d 626, 631 (Iowa 1978); *Welter v. Heer,* 181 N.W.2d 134, 136 (Iowa 1970). Even though defendants took a different position in resisting plaintiff's rule 179(b) motion, they did not seek to amend their answer.

We have no occasion to decide whether plaintiff would have been entitled to prejudgment interest in any event under the principle in *Vorthman v. Keith E. Myers Enterprises,* 296 N.W.2d 772, 778 (Iowa 1980). Nor do we have occasion to decide the effect of section 535.3, The Code. Because the entitlement to interest was admitted, the court erred in refusing to award plaintiff prejudgment interest on the terms alleged.

II. *Loss of use damages.* In denying damages for loss of use of the destroyed

automobile, the trial court followed existing precedent. *See, e.g., Aetna Casualty and Surety Co. v. Insurance Department of Iowa*, 299 N.W.2d 484, 485 (Iowa 1980):

> (1) When the automobile is totally destroyed, the measure of damages is its reasonable market value immediately before its destruction.
>
> (2) Where the injury to the car can be repaired, so that, when repaired, it will be in as good condition as it was in before the injury, then the measure of damages is the reasonable value of the use of the car while being repaired, with ordinary diligence, not exceeding the value of the car before the injury.
>
> (3) When the car cannot, by repair, be placed in as good condition as it was in before the injury, then the measure of damages is the difference between its reasonable market value immediately before and immediately after the accident.

These rules were first distilled in *Langham v. Chicago, R.I. & P. Ry.*, 201 Iowa 897, 901, 208 N.W. 356, 358 (1925). The court expressly held that loss of use damages are not allowed under the first and third rules in *Kohl v. Arp*, 236 Iowa 31, 33–34, 17 N.W.2d 824, 826 (1945).

The rule denying loss of use damages in these situations has not been specifically discussed in the cases. Because the rule has been challenged in the present case, we must determine its continued viability. We do so against the background "that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed." *Dealers Hobby, Inc. v. Mary Ann Linn Realty Co.*, 255 N.W.2d 131, 134 (Iowa 1977).

Inherent in our present rules governing damages to motor vehicles is the concept that the market value of the vehicle is the ceiling on recovery whether the vehicle can be repaired or must be replaced. In some cases the owner will be fully compensated despite that limitation. Even when the vehicle is destroyed and delay occurs before compensation is received, interest on the market value of the vehicle from the date of the accident theoretically pays the owner for the delay. The same is true when the vehicle is not destroyed but cannot be restored to its prior condition and the owner receives interest on its depreciated value. Moreover, when the vehicle can be restored by repair to its prior condition, the owner is not only entitled to compensation for the reasonable cost of repair but for reasonable loss of use damages. Although market value is nevertheless a ceiling on recovery even in this situation, full compensation is possible when the cumulated damages do not exceed the limitation.

In other cases, however, the present rules plainly do not permit full compensation. Loss of use damages will be incurred as readily when a vehicle is totally destroyed or when it cannot be restored by repair to its prior condition as when the vehicle can be restored by repair. Just as loss of use damages are necessary for full compensation when the vehicle can be restored to its prior condition, they are warranted when the vehicle is destroyed or cannot be so restored. No logical basis exists for cutting them off when the total reaches the vehicle's market value before the injury.

The origin of the market value limitation lies in history rather than logic. Damages for destruction of chattels were based on analogy to conversion. The reasonable market value of the chattel was viewed as adequate compensation under this concept in the common law action of trover. The rigidity of the analogy obscured any distinction between destruction of chattels generally and destruction of chattels of such utility that the owners incurred loss of use expense. Perhaps this distinction became important only with the advent of the motor vehicle and the practice of motor vehicle leasing and rental.

The historical basis and usual arguments for denying loss of use damages are addressed in D. Dobbs, *Remedies* § 5.11 at 384–85 (1973) (footnotes omitted):

> Loss of use claims are most commonly asserted for a period of time when the chattel is being repaired, but sometimes

the chattel is destroyed and is not repairable. In such cases, loss of use claims are sometimes asserted for the period required to replace the chattel. A number of courts have refused to permit loss of use awards in cases of total destruction, and have limited recovery in such cases to the value of the article. Destruction, of course, was closely analogous to a conversion, where the measure of damages was the value of the chattel at the time of conversion, and it was natural enough to import the conversion measure into the destruction situation. There was probably some thought that the market value of the chattel—which reflected the right to use it gainfully—plus interest for the time the owner was deprived of it, actually furnished full compensation. Another argument made against granting loss of use where there was total destruction sounds rather strange in modern ears. The authors of Sedgwick on Damages argued that when compensation for the whole value of the property destroyed is sought, "it is upon the theory that the plaintiff's entire interest in the property ceased at the time of the injury, and was replaced by a right to have the value of the property in money. Since therefore, the plaintiff no longer has title to the property he can no longer claim that he might make a future gain from it. . . . ." Such an argument probably would not be accepted, or even thought of, today. It is a conceptual argument that does not interest itself in whether the owner has actually lost something of value beyond the market value of his property; it interests itself only in a legal concept—passage of title—that is not a part of the real world of facts and has no significant relation to important facts of actual loss. A third argument against granting loss of use recovery where a chattel is totally destroyed is that to grant such recoveries opens the door to speculation. This argument, if acceptable, would seem to apply equally to any loss of use claim, whether there was destruction or merely damage. But the argument does not seem acceptable, because there is no essential reason why loss of use claims must be speculative. There is nothing speculative about the cost of a rental car for a specified time while the damaged vehicle is being replaced. If loss of use leads also to loss of profits, they are speculative as much or as little as other claims of lost profits and the question of speculation becomes in the end a question whether the evidence of loss is sufficient in each case.

The more recent cases that have given serious consideration to the rule limiting recovery in cases of destruction to the value of the chattel have rejected the rule, and have instead allowed loss of use claims in destruction cases just as in repair cases. But of course the relevant period of time in destruction cases is only the time reasonably required to obtain a replacement.

A noticeable trend toward allowing loss of use damages in destruction cases has emerged since World War II. *See* Annot., *Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed*, 18 A.L.R.3d 497, 519 n.12 (1968).

The fallacy in the market value ceiling upon recovery in a destruction case was pinpointed in *Bartlett v. Garrett*, 130 N.J. Super. 193, 196, 325 A.2d 866, 867 (1974):

When an automobile is damaged through the negligence of another, temporary loss of the use of such vehicle pending repair or replacement is a reasonably foreseeable consequence of the defendant's tortious conduct. Compensation for the temporary loss of use is directed at plaintiff's *economic loss*, the amount of money plaintiff had to pay for rental of a car. This is an injury different in *kind* from *property damage*, the amount of money necessary to repair or replace the damaged vehicle. A plaintiff in a total destruction case deprived of his reasonable loss-of-use expenses has simply not been made whole. (emphasis in original).

The same reasoning is applicable in a repair situation. *See Kopischke v. Chicago, St. P., M. & O. Ry.*, 230 Minn. 23, 31–32, 40 N.W.2d 834, 839 (1950).

Loss of use damages are now permitted under various rules even in destruction cases in a growing number of other jurisdictions. *See, e.g., Dennis v. Ford Motor Co.,* 332 F.Supp. 901 (D.C.Pa.1971), *aff'd,* 471 F.2d 733 (3d Cir. 1973) (applying Pennsylvania law); *Bettis v. Roache,* 296 F.Supp. 947 (D.C.Canal Zone 1969); *Buchanan v. Leonard,* 127 F.Supp. 120 (D.C.Col.1954) (applying Colorado law); *Stevens v. Mid-Continent Investment Co. Inc.,* 257 Ark. 439, 517 S.W.2d 208 (1974); *Reynolds v. Bank of America National Trust & Savings Assn.,* 53 Cal.2d 49, 345 P.2d 926 (1959); *Gamble v. Smith,* 386 A.2d 692 (D.C.App.1978); *Wajay Bakery, Inc. v. Carolina Freight Carriers Corp.,* 177 So.2d 544 (Fla.App.1965); *New York Central Railroad Company v. Churchill,* 140 Ind.App. 426, 218 N.E.2d 372 (1966); *Peterson v. Bachar,* 193 Kan. 161, 392 P.2d 853 (1964); *Daniel v. Kerby,* 420 S.W.2d 393 (Ky.1967); *Washington v. Lake City Beverage, Inc.,* 352 So.2d 717 (La.App.1977), *cert. denied,* 354 So.2d 1050 (La.1978); *Weishaar v. Canestrale,* 241 Md. 676, 217 A.2d 525 (1966); *Wenz v. Leon,* 90 Misc.2d 85, 393 N.Y.S.2d 309 (1977); *Roberts v. Pilot Freight Carriers, Inc.,* 273 N.C. 600, 160 S.E.2d 712 (1968); *Park v. Moorman Mfg. Co.,* 121 Utah 339, 241 P.2d 914 (1952); *Nashban Barrel & Container Co. v. G. G. Parsons Trucking Co.,* 49 Wis.2d 591, 182 N.W.2d 448 (1971). This view is also reflected in the Restatement. *See Restatement (Second) of Torts § 927 (1979).*

■ We believe our motor vehicle damage rules should be modified to permit full compensation including loss of use damages. The new rules shall apply to this case, any pending case in which error has been preserved on the issue, and all cases tried after the date of filing this opinion. As modified, the rules are as follows:

(1) When the motor vehicle is totally destroyed or the reasonable cost of repair exceeds the difference in reasonable market value before and after the injury, the measure of damages is the lost market value plus the reasonable value of the use of the vehicle for the time reasonably required to obtain a replacement.

(2) When the injury to the motor vehicle can be repaired so that, when repaired, it will be in as good condition as it was in before the injury, and the cost of repair does not exceed the difference in market value of the vehicle before and after the injury, then the measure of damages is the reasonable cost of repair plus the reasonable value of the use of the vehicle for the time reasonably required to complete its repair.

(3) When the motor vehicle cannot by repair be placed in as good condition as it was in before the injury, then the measure of damages is the difference between its reasonable market value before and after the injury, plus the reasonable value of the use of the vehicle for the time reasonably required to repair or replace it.

■ In the present case, plaintiff alleged loss of use damages but did not get an opportunity to prove them because of the adjudication of law points denying their availability. We reverse the adjudication and order that plaintiff be accorded a trial on the issue upon remand.

■ III. *The bad faith claim.* Plaintiff asks us to recognize a new tort that would permit a third party to recover against an insurer for the insurer's bad faith toward the third party in failing to settle a liability claim against the insured. This situation is to be distinguished from third party excess judgment cases and first party actions. In each of those situations the relevant duty of good faith and fair dealing arises from the insurance contract and runs from the insurer to the insured. In an excess judgment case, the issue is whether the insurer was guilty of bad faith toward the insured in failing to settle the injured party's claim within policy limits. *See, e.g., Kooyman v. Farm Bureau Insurance Co.,* 315 N.W.2d 30 (Iowa 1982). In a first party action, the issue is whether the insurer was guilty of bad faith in failing to pay the insured's own claim. *See, e.g., Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 624 P.2d 866 (1981). We have not recognized the first party tort in Iowa. *See M–Z En-*

terprises, Inc. v. Hawkeye-Security Insurance Company, 318 N.W.2d 408, 415 (Iowa 1982). We have recognized a first party tort for an insurer's intentional infliction of severe emotional distress on its insured. See Amsden v. Grinnell Mutual Reinsurance Co., 203 N.W.2d 252 (Iowa 1972).

■■■■ A third party is given standing to bring an excess judgment suit by the direct action statute, section 516.1, The Code. See Trask v. Iowa Kemper Mutual Insurance Co., 248 N.W.2d 97, 98 (Iowa 1976). Because that statute gives the third party only the right against the insurer that the insured would have if the insured paid the judgment, it has no application in the present case. Moreover, we have no occasion to decide whether a third party acquires a right to bring an action of the present kind under Iowa's insurance trade practices statute, chapter 507B, The Code. Plaintiff urged this ground for the first time in his reply brief in this court, and thus the claim comes much too late.

The arguments for and against recognizing the right of a tort victim to bring a common law action against the tortfeasor's insurer for bad faith in settling the victim's claim are carefully considered in the majority and concurring opinions in Kranzush v. Badger State Mutual Casualty Company, 103 Wis.2d 56, 307 N.W.2d 256 (1981). Insofar as relevant here, the court considered and rejected two possible bases for the action. One is the insurance contract, and the other is in tort concepts generally.

The contract basis would recognize the victim as a third party beneficiary of the insurance contract. We have reviewed principles relating to third party beneficiaries in Khabbaz v. Swartz, 319 N.W.2d 279, 284 (Iowa 1982), filed separately this date. The determinative question is "whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." Bailey v. Iowa Beef Processors, Inc., 213 N.W.2d 642, 645 (Iowa 1973), cert. denied, 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974). The insurance contract is not part of the record in the present case. Therefore we have no basis for determining that it contains an express or implied intention to make the victim a policy beneficiary.

■■■■ Plaintiff relies on a statement in R. Keeton, Basic Text on Insurance Law, section 4.8(a) at 232–33 (1971), recognizing that victims can be and sometimes are third party beneficiaries of liability insurance policies. Professor Keeton does not suggest this relationship exists under the ordinary liability policy, nor are we aware of any decision holding that it does. Because plaintiff relies only on the fact that he will benefit if the contract is carried out in accordance with its terms, he has alleged only a basis for finding he is an incidental beneficiary. See Khabbaz, 319 N.W.2d at 285. We refuse to extend the third party beneficiary concept to the limits advocated by plaintiff.

■■■■ We also decline to recognize a duty of the insurer to the victim under general tort concepts. The insurer has a fiduciary duty to the insured but an adversary relationship with the victim. The effect of the policy is to align the insurer's interests with those of the insured. In meeting its duty to the insured, the insurer must give as much consideration to the insured's interests as it does to its own. It has no such relationship with a third party. Instead the insurer stands in the shoes of the insured in dealing with the victim. Because the insured has a right to require liability to be proven as a predicate for payment of the loss, the victim cannot compel the insured to negotiate and settle the loss beforehand. No basis exists for giving the victim a greater right when negotiating with the tortfeasor's insurer than exists when the victim negotiates with the tortfeasor directly. See Kranzush, 307 N.W.2d at 265. In either event, the victim has a remedy for his injury through a tort action against the insured. That remedy will permit compensation to be ordered when it is justified.

We are aware of no jurisdiction that has recognized the kind of third party action advocated by plaintiff in this case. The

absence of authority was noted in *Uebelacker v. Horace Mann Insurance Company,* 500 F.Supp. 180, 183 (E.D.Wis.1980). The action has been rejected in *Kranzush, Linscott v. State Farm Mutual Automobile Insurance Co.,* 368 A.2d 1161 (Me.1977), and *Bowe v. Eaton,* 17 Wash.App. 840, 565 P.2d 826 (1977). We join the courts that have rejected it.

We hold that the trial court was correct in entering summary judgment for I.M.T. on the second count of plaintiff's petition. Costs are taxed one-half to plaintiff and one-half to defendants.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.