Gary **PAPENHEIM**, Appellant,

v.

Robert **LOVELL**, Appellee.

No. 93–1494.

Supreme Court of Iowa.

March 29, 1995.

Gary Papenheim, Parkersburg, pro se.

Theodore T. Duffield of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee.

SNELL, Justice.

Gary Papenheim appeals a district court decision which awarded him repair, loss-of-use, and inconvenience damages for injury caused to his vehicle by a vehicle owned by Robert Lovell. He asserts substantial evidence does not support the district court's determination that his vehicle could by repair be placed in as good condition as it was prior to the accident. He therefore seeks the difference between the value of his vehicle prior to and after the accident rather than repair damages. He additionally challenges the reasonableness of the court's loss-of-use and inconvenience damages. We affirm in part, reverse in part, and remand.

## I. Factual Background

On April 28, 1993, Papenheim filed a petition claiming the operator of a vehicle Lovell owned had negligently damaged his vehicle. Lovell did not file an appearance or an answer and the court declared him in default. The court then held a hearing on the issue of Papenheim's damages.

At the hearing, Papenheim testified the accident occurred when he was driving down a residential street in Cedar Falls. Papenheim claimed Lovell's truck struck his own vehicle twice in the rear after the truck pulled out from a parking place. Papenheim's vehicle, a 1991 Oldsmobile Toronado, was damaged in the right rear quarter panel, rear bumper area, and trunk lid. At the time of the accident Papenheim's vehicle had been driven 2900 miles.

Papenheim requested damages for: (1) the difference between the market value of his vehicle before and after the occurrence; (2) the reasonable value of the loss of use of the vehicle for the time required to repair it; and (3) compensation for lost time and inconvenience. Papenheim, and his expert witness, John Kannegeiter, provided the only testimony at the hearing.

The court recognized Kannegeiter, an owner of two used car dealerships and a body shop, as an expert witness. Kannegeiter testified that the focus of his current business is to purchase damaged cars at insurance auctions around the country, rebuild, and sell them. He testified that in the last ten years he has probably purchased seven to eight hundred cars for this purpose.

Kannegeiter observed the car both before and after it was repaired. He testified that it was his opinion that repair work could not return Papenheim's vehicle to the condition it had been in prior to the accident. Kannegeiter testified that according to his observations of the vehicle on the date of the hearing, repair work had failed to correct the damage. Specifically, he noted the reverse lights do not line up with the bumper correctly, some "body lines are off," the bumper does not fit the quarter panel properly, the wheel moldings do not fit, the trunk jamb is "pretty messy," the trunk lid gap is not correct, and the paint applied following repair has begun to chip.

The original window sticker price of the Oldsmobile Toronado was $25,509. Kannegeiter believed that at the time of the accident, the vehicle had a market value of $22,000. He based this opinion on a December 1990 observation of a comparable 1990 Oldsmobile which carried a market value of $22,300. Without ever observing Papenheim's car, an employee of Badger Chevrolet, Buick, Pontiac, Inc., located in Parkersburg, Iowa, provided a statement that the book value of a 1991 Oldsmobile Toronado with 3000 miles on it was $21,300.

In Kannegeiter's opinion, the value of Papenheim's vehicle in its damaged condition was $11,000. It was his opinion that if he purchased the vehicle in its damaged state for $11,000 and repaired it for an estimated $4000, it would have a resale market value of $17,000 to $18,000. Kannegeiter testified that the damage to this 1991 Oldsmobile greatly reduced the market value of the vehicle because potential purchasers would expect to pay a lower price for a vehicle that had been damaged to this extent.

John Deery Motor, Inc., the Cedar Falls dealer that originally sold Papenheim the automobile, estimated the amount of damage to be $4,666.63. Northwest Paint and Body Shop, located in Parkersburg, estimated the damage at $4,158.23. Northwest ultimately repaired the vehicle for this amount.

In order to present evidence of the value of loss of use of the car, Papenheim testified that he made inquiries at an Avis car rental shop regarding the rental prices of similar vehicles. At the time of the accident, Avis did not have a 1991 Toronado for rent, but rented a full-size car such as a Pontiac Bonneville or Oldsmobile Delta 88 for a weekly price of $219. Papenheim believed that his car was more valuable than either a Bonneville or a Delta 88, and upon further inquiry, learned that Avis rented luxury automobiles such as Cadillacs for $319 per week. Papenheim inquired about car rental prices again just before the hearing, and Avis informed him that its rental price for full-size cars was $224 per week or $889 per month.

Northwest Paint did not complete the repair of the vehicle until over thirteen weeks after the accident occurred. Papenheim testified that he could not use the car during this time because: (1) the taillight electronics were damaged and he could not therefore legally operate the car; and (2) he did not feel it would be appropriate to use the car for business purposes in its damaged state. He testified that there were two reasons the repair of the vehicle took so long. First, he spent the "first couple of weeks" negotiating on a price of repair. Second, all local body shops were unusually busy due to a severe hail storm that occurred in the Waterloo–Cedar Falls area in May of 1991. On the issue of personal inconvenience, Papenheim testified that he spent approximately twenty hours of his personal time on matters associated with the accident and subsequent lawsuit.

The trial court granted Papenheim a total award in the amount of $5,423.63 plus interest accruing from the date he filed the lawsuit and court costs. Specifically, the court awarded Papenheim $4,666.63 for repairs and $657 for loss of use of the car for three weeks, calculated at a rate of $219 per week. The court granted the loss-of-use award for only a three week period because it believed the actual thirteen week period was unreasonably long. Finally, the court ruled that $100 was reasonable compensation for Papenheim's inconvenience and loss of time.

On appeal, Papenheim raises three arguments. First, he contends the trial court erred in failing to award him compensation for loss of value of the vehicle and in ignoring

the testimony of the expert witness. Second, he asserts the trial court erred in finding that he was not entitled to damages for the approximately thirteen week period he was without use of the car and that three weeks was a reasonable time for the calculation of loss-of-use damages. Finally, Papenheim argues he should receive $500 rather than $100 for inconvenience and lost time.

## II. Standard and Scope of Review

 In a law action, we review a district court's determinations for errors in its application of legal principles and conclusions of law. Iowa R.App.P. 4; *Waukon Auto Supply v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 846 (Iowa 1989); *Grinnell Mut. Reinsurance Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988); *In re Mt. Pleasant Bank & Trust Co.,* 426 N.W.2d 126, 129 (Iowa 1988); *Cross v. Lightolier, Inc.,* 395 N.W.2d 844, 846 (Iowa 1986). Where the trial court sits as the finder of fact, the court's findings have the effect of a jury verdict and bind us if substantial evidence supports them. *Waukon,* 440 N.W.2d at 846; *Grinnell,* 431 N.W.2d at 785; *In re Mt. Pleasant,* 426 N.W.2d at 129; *Cross,* 395 N.W.2d at 846–47. Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Waukon,* 440 N.W.2d at 846; *Grinnell,* 431 N.W.2d at 785. Evidence is not insubstantial merely because it would have supported contrary inferences. *Grinnell,* 431 N.W.2d at 785.

 We construe the trial court's findings broadly and liberally. *Id.* In case of doubt or ambiguity we construe the court's findings of fact to uphold rather than defeat, the judgment. *Id.* In addition, the review standard prohibits us from weighing the evidence or the credibility of witnesses. *Id.*

## III. Measure of Damages

The law of Iowa governing damages to automobiles was initially established by our court in *In re Gray's Estate,* 201 Iowa 876, 208 N.W. 358 (1926). We expanded these rules by adding to the measure of damages the loss of the reasonable value of the use of the vehicle during the time of its repair or replacement. *Long v. McAllister,* 319 N.W.2d 256 (Iowa 1982). The rules formulated in *Long* are:

(1) When the motor vehicle is totally destroyed or the reasonable cost of repair exceeds the difference in reasonable market value before and after the injury, the measure of damages is the lost market value plus the reasonable value of the use of the vehicle for the time reasonably required to obtain a replacement.

(2) When the injury to the motor vehicle can be repaired so that, when repaired, it will be in as good condition as it was in before the injury, and the cost of repair does not exceed the difference in market value of the vehicle before and after the injury, then the measure of damages is the reasonable cost of repair plus the reasonable value of the use of the vehicle for the time reasonably required to complete its repair.

(3) When the motor vehicle cannot by repair be placed in as good condition as it was in before the injury, then the measure of damages is the difference between its reasonable market value before and after the injury, plus the reasonable value of the use of the vehicle for the time reasonably required to repair or replace it.

*Long,* 319 N.W.2d at 261. These rules are in accord with the general rule in most states. *See* 8 Am.Jur.2d *Automobile and Highway Traffic* § 1128, at 317 (1975); *see also Chlopek v. Schmall,* 224 Neb. 78, 396 N.W.2d 103, 108 (1986); *Camaraza v. Bellavia Buick Corp.,* 216 N.J.Super. 263, 523 A.2d 669, 671 (1987).

The trial court applied the second standard and used as the measure of damages the reasonable cost of repair of Papenheim's vehicle. The trial court reasoned as follows. The value of Papenheim's vehicle before the accident was $22,000. The value after the accident was $11,000, a difference of $11,000. Since, the cost of repairs was $4,666.63, a figure less than the $11,000 difference, the proper rule to apply, under *Long,* was the second standard. Papenheim asserts that the trial court erred in using the second

standard since substantial evidence does not support the court's determination that Papenheim's vehicle could by repair be placed in as good condition as it was in before the accident. Papenheim argues that the court should have used the third standard and awarded him the difference between the market value of the vehicle before the injury and after. Based on the proof offered by Papenheim in this case, we agree that the third standard should have been applied.

In *Halferty v. Hawkeye Dodge, Inc.*, 158 N.W.2d 750 (Iowa 1968), we addressed the same issue. There the owner of an automobile damaged by the defendant's negligence claimed that the repairs made to his vehicle did not return the car to its pre-accident market value. We said:

> There was evidence one could see by an inspection it had been damaged and repaired. There was also evidence the market value of such car was less than a car in similar condition which had never been damaged. The automobile, therefore, was not placed in as good condition as it was before the injury and the proper measure of damages would be the difference between its reasonable value immediately before and immediately after the accident.

*Halferty*, 158 N.W.2d at 753. Because the defendant had already repaired the plaintiff's car in *Halferty*, we allowed the car owner to recover the difference between the value of the repaired car and the value of the automobile before the accident, in addition to the reasonable cost of repairs. *Id.* at 753–54.

The rule applied in *Halferty* is consistent with the rule adopted in the Restatement (Second) of Torts for damage to chattels:

> When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
>
> (a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and
>
> (b) the loss of use.

Restatement (Second) of Torts § 928 (1979). Many courts have allowed recovery of depreciation in market value where repairs to the damaged automobile do not restore it to its pre-accident market value. *E.g., Farmers Ins. Co. v. R.B.L. Inv. Co.*, 138 Ariz. 562, 675 P.2d 1381, 1383 (Ct.App.1983); *Littlejohn v. Elionsky*, 130 Conn. 541, 36 A.2d 52, 53 (1944); *Perma Ad Ideas of Am., Inc. v. Mayville*, 158 Ga.App. 707, 282 S.E.2d 128, 130 (1981); *Gary v. Allstate Ins. Co.*, 250 So.2d 168, 169 (La.Ct.App.1971); *Fred Frederick Motors, Inc. v. Krause*, 12 Md.App. 62, 277 A.2d 464, 467 (1971); *Rosenfield v. Choberka*, 140 Misc.2d 9, 529 N.Y.S.2d 455, 458 (N.Y.Sup.Ct.1988); *Newman v. Brown*, 228 S.C. 472, 90 S.E.2d 649, 652 (1955); *Averett v. Shircliff*, 218 Va. 202, 237 S.E.2d 92, 96 (1977); *accord* 22 Am.Jur.2d *Damages* § 436, at 518–19 (1988); *see Waseca Sand & Gravel, Inc. v. Olson*, 379 N.W.2d 592, 595 (Minn.Ct. App.1985); *Merrill v. Tropoli*, 414 S.W.2d 474, 476 (Tex.Ct.App.1967); *Krueger v. Steffen*, 30 Wis.2d 445, 141 N.W.2d 200, 201–02 (1966); *cf. Merrill Stevens Dry Dock Co. v. Nicholas*, 470 So.2d 32, 33 (Fla.Dist.Ct.App. 1985) (damaged boat); *Trailmobile Div. of Pullman, Inc. v. Higgs*, 12 Ill.App.3d 323, 297 N.E.2d 598, 600 (1973) (damaged trailer); *Thomas v. Global Boat Builders & Repairmen, Inc.*, 482 So.2d 1112, 1115 (Miss.1986) (damaged boat).

■ Allowance of diminution in market value where repairs cannot restore the vehicle to its pre-accident condition is consistent with the general rule that the measure of damages is the amount that will compensate for all detriment naturally and proximately caused. *See Camaraza*, 523 A.2d at 671; *Fred Frederick Motors*, 277 A.2d at 466; *Rosenfield*, 529 N.Y.S.2d at 458. If repairing the vehicle does not return the car to its pre-accident condition as measured by its market value, then the owner is not compensated for the detriment caused if only awarded cost of repairs. *Fred Frederick Motors*, 277 A.2d at 466; *Rosenfield*, 529 N.Y.S.2d at 458.

■ This measure of damages for cars not totally destroyed is also consistent with allowing the owner of a vehicle which is completely destroyed to recover the market value. If the owner of a vehicle which is not

totally destroyed is not compensated for any diminution in market value after repairs in addition to the cost of repairs, then there would be a different measure of recovery depending upon whether the vehicle was partially or completely destroyed. *Fred Frederick Motors,* 277 A.2d at 466. Only in the latter situation would the owner be fully compensated.

For these reasons, we apply the measure of damages we originally adopted in *Halferty* to the facts of this case. Under this rule, if Papenheim proved that repairs would not fully restore his car to its pre-accident market value, he was entitled to recover the difference between the reasonable market value of his automobile before and after the accident. We must determine whether substantial evidence supports the trial court's finding that Papenheim did not meet his burden of proof.

█ A thorough review of the record, including a consideration of the nature of the damages the vehicle experienced, does not demonstrate the existence of substantial evidence to support the trial court's determination that the vehicle could by repair be placed in as good condition as it was in before the accident. The nature of the damage to the vehicle in this instance does not itself constitute evidence which a reasonable mind could accept as adequate to reach the court's findings. *See Waukon,* 440 N.W.2d at 846; *Grinnell,* 431 N.W.2d at 785. In fact, the defendant did not present any evidence at trial whatsoever, and one could not reasonably infer from the evidence in the record, that the vehicle could by repair be placed in the same condition it was in prior to the accident.

In this case, the vehicle at issue was in a nearly new condition. Evidence indicated the car experienced a loss in value due to the accident and could not be returned to its pre-accident condition before repairs. We therefore reverse the trial court's decision to the extent it only awarded damages for the cost of repairs. We remand for a determination on the present record of the difference between the vehicle's value before and after the accident.

## IV. Loss-of-Use and Inconvenience Damages

At trial, Papenheim requested damages for the loss of use of his vehicle for thirteen weeks and presented evidence of the weekly and monthly rate for rental of similar vehicles. The trial court held that only three weeks loss-of-use was reasonable and held in Papenheim's favor accordingly at a weekly rental rate associated with full-size cars such as a Pontiac Bonneville or Oldsmobile Delta 88. Papenheim argues the court erred in failing to award him the damages for thirteen weeks because circumstances reasonably kept him from getting his car repaired for this length of time. Lovell contends the trial court acted reasonably in awarding Papenheim damages for only three weeks loss-of-use.

█ Under *Long,* a plaintiff seeking damages for injury to a motor vehicle may also seek the reasonable value of the use of the vehicle for the time reasonably required to repair or replace it if the vehicle cannot by repair be placed in as good condition as it was in at the time of the accident. *Long,* 319 N.W.2d at 261. In order for damages to be adequate, they must "fairly and reasonably compensate an injured party for the injury sustained." *Householder v. Town of Clayton,* 221 N.W.2d 488, 493 (Iowa 1974); *Jackson v. Roger,* 507 N.W.2d 585, 589 (Iowa App.1993). A damage award "need only bear a 'reasonable relationship to the loss suffered' to be sustained." *Jackson,* 507 N.W.2d at 589 (quoting *Householder,* 221 N.W.2d at 493).

█ Papenheim contends an award of damages for the entire thirteen week period is justified because: (1) he spent the "first few weeks" obtaining estimates and negotiating; and (2) when he determined he could not sell the car, he sought to have it repaired, but all local body shops were excessively busy due to a recent severe hailstorm. We conclude that the record supports the trial court's finding that thirteen weeks was not a reasonable length of time for the vehicle to be unrepaired. The trial court's award of three weeks loss-of-use damages at $219 per week fairly and reasonably compensated Papenheim for the loss of use of his vehicle.

We therefore affirm the court's decision on this matter.

 At trial, Papenheim additionally sought monetary damages for the personal time he spent dealing with matters related to the accident. He asserts that he spent approximately twenty hours of his own time on this controversy. The trial court awarded him $100 for this inconvenience and on appeal, he asks us to raise this amount to $500. Lovell does not challenge the court's $100 award other than to assert that there is no precedent for such an award.

We know of no authority or precedent to allow the award of damages to plaintiff for time spent dealing with matters related to the accident. However, defendant did not present that challenge to the award in the trial court. We therefore affirm the trial court's award of $100 for this item of damages.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**