[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT ALLSTATE'S MOTION TO STRIKE
In this case, the plaintiff alleges in his second amended complaint that he received injuries on October 31, 1977, as a result of the negligent operation of a motor vehicle by the defendant Anthony LaRosa. The first two counts lie against this defendant and the owner of the vehicle and are based on negligence and recklessness.
The third count is brought against the LaRosas' liability insurer, Allstate. Paragraph 5 alleges that after the accident, Allstate created a claim number and assigned a representative to handle the claim. Paragraph 6 asserts that Allstate had "an obligation to act in good faith and engage in fair dealings in the administration of an accident claim. Paragraph 7 alleges that obligation was breached in one or more ways: it offered the plaintiff $250 in full settlement and sent the plaintiff a check in that amount six weeks after the accident, which was returned; Allstate knew or should have known that an offer of $250 six weeks after a "severe accident is unreasonable and unconscionable;" a later offer of $750 also was "unreasonable and unconscionable given the severity of the accident and after being notified that the plaintiffs injury has resulted in a permanent partial impairment; and Allstate misled the plaintiff by misrepresenting that the limitations statute would expire on October 31, 1999, and to pursue the case after that date the plaintiff would have to get a lawyer. The plaintiff in paragraph 8 alleges that as a result of the insurer's breach of its good faith and fair dealing obligation the plaintiff was "misled and defrauded, suffered emotional distress and mental anguish, emotional damages and was required to retain counsel to represent him. Paragraph 9 asserts as a further result of Allstate's breach, "the plaintiff was deprived of his rightful settlement in a clear liability case involving permanent injuries."
The fourth count repeats all of the allegations of the third count and further alleges these actions violated the Connecticut Unfair Trade Practices Act (CUTPA) — unfair methods of competition and deceptive acts or practices were perpetrated, the conduct was immoral, unethical, oppressive or unscrupulous and violated the public policy of the state. The eleventh paragraph refers to three other suits brought in this county where allegations have been made that Allstate engaged in unfair business practices. It is further alleged the defendant insurer took these actions in the "general course of its trade or business and caused substantial financial loss to the plaintiff."
Count five repeats the same factual allegations as do counts six, eleven and eight. Each of these counts claim that the acts mentioned are unfair and deceptive under § 38a-815 the Connecticut Unfair Insurance Practices Act (CUIPA). Count five makes a claim under § 38a-816 (2), count six under § 38a-816 (4), count seven under § 38a-816 (6), CT Page 372 count eight under § 38a-816 (15). Also, each one of these counts refers to paragraphs eleven and twelve c the fourth count which mention the three suits brought against Allstate in this county and claim Allstate's actions were part of a general business practice causing the plaintiff "substantial financial loss."
The defendant Allstate has filed a motion to strike against all of the counts brought against it. Motions to strike test the legal sufficiency of claims and under our rules the complaint must be given that reading which is most favorable when a motion to strike is filed against it.Amodio v. Cunningham, 182 Conn. 80, 82 (1980),
 I.
The third count, as noted, presses a claim against Allstate based on an alleged breach of the covenant or duty of good faith and fair dealing. The defendant first argues that this duty is "essentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended," Verrastro v. MiddlesexIns. Co., 207 Conn. 179, 190 (1988). The defendant then cites Superior Court decisions involving claims against insurance companies, such asPeterson v. Allstate Ins. Co., 1992 WL 239088 and Webster v. U.S.Fidelity Guaranty Co., 1995 WL 139535, which stand for the proposition that the courts have not extended the duty of good faith and fair dealing to parties who have not entered into a contract with each other. Thus, the defendant argues that since the plaintiff is not a party to the contract of insurance between Allstate and the insured tortfeasor, a claim against the insurer cannot be maintained based on a violation of the covenant of good faith and fair dealing.
The plaintiff tries to rebut this argument by maintaining that Allstate has misconstrued its position. It is said that the plaintiff is a third party beneficiary of the insurance contract between the tortfeasor and his carrier Allstate).[1] Gateway Co. v. DiNoia, 232 Conn. 223 (1995), is cited which says that the "ultimate test" to determine whether a party can sue as a third party beneficiary "is whether the intent of the parties to the contract (here, the tortfeasor and Allstate) was that the promisor (Allstate) should assume a direct obligation to the third party beneficiary (the injured party), id. page 231.
Here, according to the plaintiff, the test has been met. Allstate assigned a case number to the file and a representative to handle the plaintiffs claim and "deal with the plaintiff on behalf of" its insured. The insured and Allstate intended that the carrier would "assume a direct obligation to the plaintiff" and in attempting to settle the claim the company acted as the agent for its principal, the tortfeasor LaRosa CT Page 373 — ergo, the plaintiff is a third party beneficiary of the contract between the tortfeasor and his company. The plaintiffs argument is somewhat conclusory and Allstate cites several Superior Court decisions explicitly rejecting the notion that an injured party is the third party beneficiary of the insurance contract between the tortfeasor and the tortfeasor's insurance company, Weinberg v. Isom, 1995 Conn. Super. (Lexis 3587); Webster, et al v. USFG, 1995 Conn. Super. (Lexis 893); also see Richards v. Deaton, No. 309417, J.D. Danbury (1993) (8 Conn. L. Rptr. 493).
The problem is that the injured claimant is not a third party beneficiary under the traditional test referred to in Gateway, and other jurisdictions also accept this view.
In Gateway, the court said that "the proper test" to decide whether parties have created a third party relationship is whether the contracting parties — here, the insured tortfeasor and the insurer Allstate — intended to create a direct obligation from the insurer to the third party, here, the injured claimant, id. page 231.
Basically, we have adopted the position of the Second Restatement of Contracts at Section 302 with regard to the law as to third party beneficiaries. To qualify as an intended beneficiary under the Restatement a third party such as the injured plaintiff here must show that the recognition of the right to performance running to the beneficiary (injured plaintiff) "is appropriate to effectuate the intention of the contracting parties — the tortfeasor and the insurer and secondly, the injured plaintiff must show one of the following (a) "the performance of the promise will satisfy an obligation of the promisee (tortfeasor) to pay money to the beneficiary (injured claimant) or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."
The insurance contract in this case has not been presented to the court but in the ordinary liability insurance situation the insurer does not assume a direct obligation to pay, without more, any claim made against its insured — it only agrees to be responsible to a third party claimant if the insured has been held at fault by a court or jury for injury to that party and, of course, the insurer can determine fault exists on the part of the insured and decide to settle the matter prior to trial. In other words, the prospective third party in the contemplation of the contracting parties — the insured and his or her insurer — is at the time of insurance contract formation a potential adverse party as to any claim and the amount of any future claim that might be made by such third party. In the Law of Contracts, 4th
Ed., Calamari, Perillo, at Chapter 17, discusses third party beneficiary law and at Section 17.9, page 636 addresses the liability insurance CT Page 374 situation. The authors posit the issue they are discussing —
 . . . "a situation in which I (indemnitor) promises to A (indemnitee) to discharge A's legal liability in the event that A becomes liable to the third party This is the situation presented under a liability insurance policy. It is often held that the third party may not recover from the indemnitor until a valid judgment has been obtained against the indemnitee. Under this holding in effect the third party is not a third party beneficiary until a judgment has been obtained."
Courts in other jurisdictions have, as indicated, held that injured third party claimants cannot pursue a third party beneficiary claim against the tortfeasor's insurer. The Iowa Supreme Court in Long v.McAllister, 319 N.W.2d 256 (1982), refused to permit an injured party to sue the tortfeasor's insurance company based on a third party beneficiary argument. The mere fact that the third party will receive a benefit if the insurer fulfills its contractual obligations to the insured does not make the third party claimant a third party beneficiary. Thus, the court in Long v. McAllister said: "Because plaintiff relies only on the fact that he will benefit if the contract is carried out in accordance with its terms . . . (in such a case) . . . he has alleged only a basis for finding he is an incidental beneficiary," id. page 262, see also Grigerie v. Shame, 45 Conn. App. 775, 788 (1997), where the court noted an "incidental beneficiary" has no legal rights under a contract between other parties, see also Restatement (Second) Contracts at § 302, comment (e), see also Kransuch v. Badger State Mutual Ins. Co.,307 N.W.2d 256, 263 (Wis.Sup.Ct., 1981), also see 45 CJS "Insurance" at § 376, page 100), 44 Am.Jr.2d "Insurance," § 1403 at page 342.
The underlying reason why the injured claimant in these situations cannot be considered a true third party beneficiary and why it defies logic to conclude the tortfeasor and the insurer intended to assume a direct obligation to prospective injured parties is best explained in an older case. Linscott v. State Farm Mutual Ins. Co., 368 A.2d 19961 (Me., 1977). Linscott is a leading case cited by other courts dealing with these good faith and fair dealing claims. In Linscott, the plaintiff tort claimant entered into negotiations with the insurer of the alleged wrongdoer. A settlement offer was made within the policy limits which was rejected by the insurer and the plaintiff was compelled to hire out of state counsel. The matter was then settled within the policy limits for only one thousand dollars less than the original offer by the plaintiff. The court treated the suit by the plaintiff against the insurer as a claim for breach of the insurer's duty to negotiate in good faith with the injured tort claimant. The court dismissed the claim on the grounds CT Page 375 of legal insufficiency and said:
 "The pretrial negotiations which may be conducted between a tort claimant and a defending insurance company are adversary in nature and, hence, will not give rise to a duty to bargain in good faith, as claimed by plaintiff. A `duty of good faith and fair dealing' in the handling of claims runs only to an insurance company's insured, it derives from a covenant implicit in the provisions of the insurance contract establishing the insurer as the authorized representative of the insured and is, therefore, without application for the benefit of the adversary third party tort claimant. . . . Indeed, that the insurer is the representative of the insured logically imports that the third party tort claimant's status as the adversary of the insured renders him, ipso facto, the adversary of the insured's agent. Thus, prior to the establishment of legal liability, as the tort claimant has no legal right to require the tortfeasor to negotiate or settle, it likewise lacks right to require such action by his representative. This is true even if it is the insurer which voluntarily initiates the pre-litigation negotiations with the injured tort claimant"
Id. at pp. 1163-1164.
Kransuch v. Badger State Mutual Cas. Co., 307 N.W.2d 256, 263-265
(Wis.Sup.Ct., 1981) accepted Linscott's reasoning and noted at page 265 that: "To declare the existence of a cause of action in favor of the claimant against the insurer for these injuries would be to expose an insurer to liability for failure to satisfy a claim before the fundamental predicate to its duty to do so has been established — the determination of the insured's legal liability.
For the foregoing reasons, the court concludes that the third count must be stricken. An ordinary liability policy is referred to in the pleadings without any reference to particular policy language which would provide a basis for a third party beneficiary claim by the plaintiff Lacking this predicate characterization, no claim can be made against the defendant Allstate grounded on any breach of the covenant of good faith and fair dealing.[2] The court will now discuss the legal sufficiency of the several counts based on CUIPA.
 II.
The first question presented is whether a private right of action is CT Page 376 permitted under CUIPA. Both sides agree that this question has not been decided by our appellate courts. The narrower question, at least for the purposes of this case, is whether a third party claimant, such as the plaintiff here, as opposed to the insured has a private right of action under CUIPA. it is also true that the trial courts in our state appear to be divided on this question. See Joseph, et al v. Hannan Agency, et al,1997 Ct. Sup. 17 (Moraghan, J.) which lists the cases taking different positions on the general question of whether CUIPA provides for a private cause of action. The court will thus turn to decisions of appellate courts in other jurisdictions.
A leading case in this area is Moradi-Shalal v. Fireman's Fund Ins.Co., 758 P.2d 250 (1988). This case will be discussed in more detail, but it generally held that an insurance statute prohibiting insurance companies from engaging in unfair practices, such as not making an effort in good faith to reach a fair or prompt settlement of a claim did not create a private cause of action in favor of third party claimants (case before Moradi court) or insureds. Moradi overruled an earlier California case permitting such actions. Royal Globe Ins. Co. v. Superior Court,592 P.2d 329 (1979). In the 2000 Cumulative Supplement to Volume 16A ofInsurance Law Practice, Appleman states that Moradi "contains good discussion of case law, commentaries, and public policy issues". At page 53 of the Supplement Appleman makes the following observation:
 "A great majority of courts facing the issue have similarly held that their state unfair claims and settlement statutes do not create private causes of action against insurers. These courts include the California Supreme Court. (Moradi) which in so holding has recently overruled its earlier Royal Globe decision, the leading decision recognizing a private cause of action; the court has thereby probably eliminated the impetus for any further national development of private causes of action under unfair insurance practice statutes."
 (Also see Couch, Insurance 3d Ed., § 58.4, pp. 261-262; 44 Am.Jur.2d "Insurance," § 1403.)
At least as regards CUIPA actions by third party claimants, such as the plaintiff here, the reasoning of Moradi is convincing and the court will now review that holding; the discussion begins at 758 P.2d, page 63 and goes through page 69. The Moradi court first notes that the California Unfair Practices Act was derived from the National Association of Insurance Commissioners' Model Act which has been adopted by 48 states. The Connecticut act has the same derivation, compare language of § CT Page 37738a-816 of CUIPA with § 790.3 of California act set forth in footnote 2 of Moradi at 758 P.2d, page 60, also see Mead v. Burns, 199 Conn. 651,659 (1986) ("model act was basis for this state's enactment of CUIPA in 1955. . . .").
The Moradi court notes that "19 states other than California have faced the issue whether their versions of the model act created a private cause of action. The courts in 17 of these 19 states have refused to recognize such a cause of action either expressly rejecting the Royal Globe
analysis, or interpreting statutory language similar to §§ 790.3, subdivision h and 790.09 in a manner contrary to Royal Globe without mentioning the case," 758 P.2d at page 63. Cases cited by the Moradi
court are White v. Unigard Mut. Ins. Co., 730 P.2d 1014, 1020 (Id., 1986); Scroggins v. Allstate Ins. Co., 393 N.E.2d 718, 723 (Ill., 1979);Earth Scientists v. USFG, 619 F. Sup. 1465, 1470 (D.Kan., 1985); Tweetv. Webster, 619 F. Sup. 104, 105 (D.Nev., 1985); Patterson v. GlobeAmer. Cas. Co., 685 P.2d 396, 397 (N.M. 1984); AE Supply Co. v.Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 677 (Ca. 4, 1986) (applying Virginia law), Kransuch v. Badger State Mut. Cas. Co., 307 N.W.2d 256,265 (Wis., 1981); Young v. Michigan Mut. Ins. Co., 362 N.W.2d 844, 846
(Mich., 1984); Morris v. American Family Mut. Ins. Co., 386 N.W.2d 233,234 (Minn. 1986); Lawton v. Great Southwest Fire Ins. Co., 392 A.2d 576,581 (N.H., 1978); Farris v. USFG, 587 P.2d 1015, 1018 (Or., 1978);D'Ambrosio v. Pa. Nat. Mutl. Cas. Ins. Co., 431 A.2d 966, 969 Pa. 1981);Swinton v. Chubb Sons, Inc., 320 S.E.2d 495, 496 (S.C., 1984);Russell v. Hartford Cas. Ins. Co., 548 S.W.2d 737, 742 (Tex., 1977);Wilder v. Aetna Life Cas. Co., 433 A.2d 309, 310 (Vt., 1981); Tank v.State Farm Fire Cas. Co., 686 P.2d 1127, 1132 (Wash., 1984). This court has found other cases taking a similar position, Perzga v. Ohio Cas.Group, 504 A.2d 1200, 1204 (N.J., 1986); Strack v. Westfield Companies,515 N.E.2d 1005, 1008 (Oh., 1986); Farmer's Union Cent Exchange v.Reliance Ins. Co., 675 F. Sup. 1534, 1536 (D.N.D., 1987); Herrig v.Herrig, 844 P.2d 487, 492 et. seq. (Wyo., 1992) (third part claimant)[3]
Interestingly, in the case of Crystal Bay General Improvement Dist. v.Aetna Cas. Surety Co., 713 F. Sup. 1371 (D.Nev., 1989), the court in recognizing a private right of action under the Nevada unfair insurance practices act for the insured against the insurer distinguished the case before it from Tweet v. Webster, supra, where the Nevada District court held that a third party claimant has no such right, id. p. 1376.
The reasoning of Moradi which rejected the right to bring a private action under its version of the model act does not, however, rest merely on counting cases from other jurisdictions. The court also notes that the National Association of Insurance Commissioners who drafted the model act in a 1980 report indicated no private cause of action provision was contained in the 1971 Model Act. More instructively, the Commissioners CT Page 378 issued guidelines and regulations in October, 2000 for the Unfair Trade Practices and Unfair Claims Settlement Practices Act. On page 29, it states:
"1. Purpose
 The purpose of this Act is to set forth standards for the investigation and disposition of claims arising under policies or certificates of insurance issued to residents of [insert state]. It is not intended to cover claims involving workers' compensation, fidelity, suretyship or boiler and machinery insurance.
 Nothing herein shall be construed to create or imply a private cause of action for violation of this Act.
 Drafting Note: A jurisdiction choosing to provide for a private cause of action should consider a different statutory scheme. This Act is inherently inconsistent with a private cause of action. This is merely a clarification of original intent and not indicative of any change of position. The NAIC has promulgated the Unfair Property/Casualty Claims Settlement Practices and the Unfair Life, Accident and Health Claims Settlement Practices Model Regulations pursuant to this Act."
The Moradi court at page 66 goes on to note that commentators criticizing the Royal Globe's recognition of a private cause of action "have observed that the rule in that case promotes multiple litigation, because its holding contemplates, indeed encourages, two lawsuits by the injured claimant: an initial suit against the insured followed by a second suit against the insurer for bad faith refusal to settle." The court went on to say: "As a corollary, Royal Globe may tend to encourage unwarranted settlement demands by claimants, and to coerce inflated settlements by insurers seeking to avoid the cost of a second lawsuit and exposure to a bad faith action."
The court goes on to note that several commentators conclude that allowing a direct action against the insurer "may result in escalating insurance costs to the general public resulting from insurers' increased expenditures to fund coerced settlements, excessive jury awards, and increased attorney fees," 758 P.2d at page 66.
What this court finds peculiarly disturbing is a subject discussed in CT Page 379 the first part of the opinion and that, as will be discussed, has relevance to the CUTPA issue. At page 67, the court notes that most commentators:
 . . . "have noted another unfortunate consequence of our holding in Royal Globe that insurers owe a direct duty to third party claimants: It tends to create a serious conflict of interest for the insurer who must not only protect the interests of its insured, but also must safeguard its own interests from the adverse claims of the third party claimant. This conflict disrupts the settlement process and may disadvantage the insured."
At page 67, the court goes on to discuss the practical problems raised in allowing private actions by third party claimants under its earlierRoyal Globe decision. The decision failed to "specify the stage at which the insurer's duty to settle arises . . . discuss whether mutual good faith obligations are imposed on third party claimants . . . or anticipate a "host of constitutional problems such as vagueness, the right to a jury trial and the right to contract." The latter comment as to vagueness refers to the Moradi's court concern with Royal Globe's failure to define "bad faith" refusal to abide by a provision analogous to our § 38a-816 (6). The broad and vague language of the other statutory subsections brought into play by the plaintiffs complaint raise similar problems, see the language of subsections (2), (4) and (15). These subsections use conclusory terms. Subsection (2) talks in terms of "false information and advertising generally." Subsection (4) is concerned with "boycott, coercion and intimidation;" subsection (6) is replete with general terms and subsection (15) makes it an "unfair practice" where there is a "failure to pay accident and health claims."
A final analytical nightmare only hinted at in Moradi is that created by the requirement under Mead v. Burns, supra, that for an unfair and deceptive act or practices claim under § 38a-816 it must be shown that the insurer has made it a business practice and pattern to act in violation of the statutory subsections alleged. Given the broad and vague language of these subsections, which must be interpreted in light of the particular and often unique circumstances presented by each claim, how can any general pattern of inappropriate behavior by insurers be fairly ascertained — should it be left to the whim of scores of individual Superior Court judges? In fact, the statutory language itself argues for the view the drafters of the model act hold — that the act's requirements were meant to be developed and defined by administrative regulation not by private litigation. CT Page 380
The result reached by the Moradi court through its analysis of the California version of the model act can also be arrived at by application of the principles set forth in § 874A of the Restatement of Torts Second, comment h, to the act of that state and our CUIPA. That section discusses the factors a court should take into account in deciding whether a tort remedy should be provided for violation of a legislative provision. Several factors militate against providing a private action in tort for violation of CUIPA under a Restatement analysis. As noted, the language of § 38a-816 is vague and general; courts on a seriatim basis would have to provide definitions of appropriate action or failures to act by insurers — the act itself provides little guidance to courts and insurers as to what conduct is prohibited. (Subsection (1) of comment (h)). Recognizing such a tort would impose too erratic a penalty and any damages are not objectively ascertainable (Subsection (3) of comment (h).)
If legislative intent "is to be considered a factor," what must also be taken into account is the "drastic change" from established law. Allowing third party claimants to bring actions like this against insurers before a case has gone to judgment against the tortfeasor would represent a dramatic change in prior law. Furthermore, it can hardly be said the law was "already moving in this direction" so that recognizing this private action merely accelerates the change in the law — reference is had to the previous quote from Appleman and Moradi's reversal of RoyalGlobe, the law on the national level has been moving the other way, that is, against recognizing a private cause of action, (Subsection (5) of comment (h)). It is also true that the Restatement suggests that another consideration is whether a "heavy flow of litigation will result if the private cause of action is recognized. (Subsection (6)). It is quite likely that not only a heavy flow but a veritable flood of litigation will ensue if third part claimants can bring a private action under CUIPA against insurers and recognition of this new tort would complicate the settlement process in pending cases.
The Restatement in subsection (2) of comment (h) cautions courts to look at the adequacy of existing remedies in deciding whether the courts should recognize a private cause of action under regulatory legislation. The Moradi court dealt with this issue at 758 P.2d pp. 68-69. Moradi noted that its act gave powerful remedies to the Insurance Commissioner, so does our act. The court then went on to say:
Moreover, apart from administrative remedies, the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress and (as to the CT Page 381 insured) either breach of contract or breach of the implied covenant of good faith and fair dealing. Punitive damages may be available in actions not arising from contract, where fraud, oppression or malice is proved. . . ." Id. pp. 68-69.
This court agrees with these observations — to put another perspective on the issue, if the factual allegations made here do not support an action in fraud or negligent or intentional infliction of emotional distress, why should the passage and existence of CUIPA create a remedy for the same underlying conduct. But beyond that, this does not mean the law must remain frozen; the common law, flexible as it is, can always consider accommodating new types of factual allegations under such traditional torts.
In any event for the foregoing reasons the court concludes that CUIPA does not create a private right of action, at least as to third party claimants. There is thus no need for the court to posit such a possibility and then decide if the complaint sets forth a legally sufficient basis for violation of the various subsections of § 38a-816
set forth in various counts. Accordingly, the fifth, sixth, seventh and eighth counts are stricken.
 III.
Count 4 alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The defendant, Allstate, as indicated, has also moved to strike that count.
This court has concluded that third party claimants who are not parties of course to the insurance contract between the tortfeasor and his or her insurance company do not have a private cause of action for allegedly unfair settlement practices under CUIPA. How does this bear on the question of whether there can be a viable third party claim against the insurer under CUTPA?
In trying to resolve the CUTPA issue, great difficulties are presented, to this court at least, by the factual setting of Mead v.Burns, 199 Conn. 651 (1986). The plaintiff in Mead v. Burns appears to be a third party claimant. The plaintiffs truck was damaged as it slid on an icy highway. The plaintiff sued the commissioner of transportation and the commissioner's insurance carrier Aetna on the grounds that Aetna "knowingly and in bad faith refused to pay the plaintiffs claim without conducting a reasonable investigation based upon all the available information," id. p. 653. The court then discussed the plaintiffs claim against the defendant insurer under CUIPA holding that a CUIPA claim had CT Page 382 not been properly alleged since such a claim requires more than a single act of insurer misconduct, id. p. 660.
At page 660, the problems begin where the court says, "The second issue that we must address is the scope of liability imposed by CUTPA on the insurance industry." The court did not deal with the third party claimant issue but broadly held that in the appropriate case an action will lie under CUTPA. But for such an action to lie the alleged wrongful conduct must constitute a violation of CUIPA. Thus, the court went on to uphold the striking of the CUTPA count since single acts of insurer misconduct are not sufficiently violative of our state's public policy to permit a CUTPA cause of action. Can it be argued that since the court posited the viability of a CUTPA action against the tortfeasor's insurer by a third party claimant — the plaintiff before it — that that means the court has held such an action is permissible if properly pled?
It cannot be. At pages 656-657 of the opinion, the court explicitly did not decide whether a private cause of action existed under CUIPA. Apparently then trial courts are not cons trained by anything in Mead v.Burns from deciding no private cause of action under CUIPA lies, at least by third party claimants against a tortfeasor's insurer. But if that is the correct position how can the same third party claimant sue under CUTPA? What can be deduced from reading The Connecticut Unfair TradePractices Act, Langer, Morgan, Belt, at p. 89 of Volume I, is that the net result of Mead v. Burns can be summed up as follows: . . . "just as CUTPA is dependent on CUIPA for substantive content CUIPA is dependent on CUTPA for enforcement." In Mead v. Burns, the court explicitly held that insurance practices can be the subject of two regulatory statutes but then went on to hold that conduct not violative of CUIPA cannot be held to be violative of CUTPA, 199 Conn. pp. 663, et seq. Well, if you cannot sue as a third party claimant under CUIPA based upon, for want of a better word, can be defined as a lack of standing how can one sue an insurer under CUTPA if you are a third party claimant — the answer ought to be you cannot.
The only way out of this dilemma would be to say to Mr./Ms. third party claimant that even though we will not permit you to bring an action under CUIPA against the tortfeasor's insurer, we will allow a CUTPA claim against the insurer by ascertaining whether you would have had a substantive CUIPA claim if we had allowed you to make that claim in the first place — that would result in analytical meltdown. As Langer, Morgan and Belt say in their treatise at page 89 of Volume I.
"Such authority as exists (trial court cases) suggests that no actions may be brought against an insurer under CUIPA except by an insured. Third party claims CT Page 383 cannot be brought under CUIPA. Although there is no substantial discussion of the issue, the preemptive effect is extended in this context to prevent third-party actions under CUTPA, even though the courts read CUIPA as not covering such claims."
But perhaps it is more instructive to approach this problem from the perspective of the policy goals, purposes and guidelines behind CUTPA itself. Our act was modeled on the federal Clayton Act passed in 1914 which is administered by the Federal Trade Commission. Our act explicitly instructs the courts to look for guidance to the federal act and the actions of the FTC. When the Clayton Act was first passed, it was geared toward protecting competitors from unfair acts and practices; in 1938 the federal act was amended to extend protection to consumers. Competitors, consumers, that is who is protected under these acts, they are not directed at all activity involving commerce or all of life and its myriad economic problems. From that perspective, how can a third party claimant be said to have a consumer relationship with the insurer of a tortfeasor. As discussed in the first part of this decision, such a claimant and the insurer have a naturally adversary relationship with each other, indeed the insurer must have such a relationship with the third party claimant because of its fiduciary obligations owed to its insured (the tortfeasor), see Linscott v. State Farm Mutual Ins. Co., supra; Long v. McAllister, supra; Moradi-Shalal v. Firemen's Fund Ins., supra.
In fact, factually a third party claimant's suit against the tortfeasor's insurer is similar to the CUTPA claim brought by the plaintiff in Jackson v. R.G. Whipple, Inc., et al, 225 Conn. 705 (1993), against the attorney who filed legal action against her in behalf of the client co-defendant. In that case, the court rejected the CUTPA claim against the attorney saying at page 727:
 "Providing a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney s independent professional judgment on his or her client's behalf."
The insurer has at least similar obligations to its insured who is the underlying tortfeasor and a CUTPA action against an entity such as an insurer is not contemplated under the act, remedial though it may be, because the underlying consumer relationship, rationally defined just CT Page 384 does not exist. As said in Jackson, ". . . it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any `trade' or `commerce.' Although privity, in the traditional contractual sense of an exchange of consideration between parties may no longer be an essential for standing under CUTPA, a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to him or her. CUTPA was, after all, enacted by the legislature to `put Connecticut in the forefront of state consumer protection' . . .," 225 Conn. at pp. 725-727. The reasoning of the Jackson case should apply to bar a CUTPA claim by a third party claimant against the tortfeasor's insurer.
There is another fundamental problem in applying CUTPA to this type of situation. It is really a practical problem concerning application of the guidelines established to determine if there has been a CUTPA violation. Our court has made clear that in determining whether a CUTPA violation exists the so-called "cigarette rule" applies which was formulated by the FTC, McLaughlin Ford, Inc. v. Ford Motor Co., 192 Conn. 558, 567 (1984). The first of the three criteria requires a determination as to whether the practice offends public policy as established by statute or the common law; the second consideration is whether the practice is among other things immoral, unethical or unscrupulous. As a trial court, how do you determine whether these criteria have been met in the third party's claim against the insurer when on the other side of the battle line the insurer argues that as to any particular allegation brought by the claimant it, the insurer, would have been compelled to violate its fiduciary obligation to its insured, the tortfeasor, if it had acted in any other way'?
And what of the third criteria of the cigarette rule — does this practice cause substantial injury to consumers. In the context of third party claimants, suits against the tortfeasors' insurer what consumers are we talking about? Is the class of consumers the general liability insurance buying public — prospective tortfeasors that is? If that is the class or one of the classes that would be affected by allowing this type of CUTPA claim, what about the concern raised in Moradi
concerning a general increase in premiums if a CUIPA type action is allowed against the insurer. The same result would ensue if a CUTPA claim were to be permitted. For all of these reasons, the court strikes the fourth count which asserts a CUTPA claim.
The court, therefore, strikes counts four, five, six, seven and eight.
Corradino, J. CT Page 385